IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>vs.<br>MARK KEIRSON SCHNURMAN,<br>　　　　Defendant.<br>_____ | No.  CR 05-01231-TUC-FRZ [CRP]<br><br>REPORT and RECOMMENDATION |

Defendant filed a Motion To Suppress Unlawful Arrest and Search [Dkt. 34], and a Motion to Suppress Unlawful Identification [Dkt. 33] .  The Government opposes both motions.  For the reasons set forth herein, this Court recommends that the District Judge, after his independent review, **DENY** both motions.

## FACTS

On May 31, 2005, United States Border Patrol Agent John S. Dodson responded to a citizen report that illegal immigrants were being loaded into a recreational vehicle (RV) at the intersection of Ranch and Larson Road in Hereford, Arizona.  When Agent Dodson arrived at the reported location, he observed the RV stopped in the west-bound lane of traffic and Mr. Keith Dana Dangerfield attempting to enter the RV from the passenger side.  Agent Dodson activated his emergency lights, notified Border Patrol of his location, and approached the RV.

Before Agent Dodson reached the RV, Mr. Dangerfield stepped between Agent Dodson and the RV.  Mr. Dangerfield stated that he was having vehicle problems.  Agent Dodson asked Mr. Dangerfield his citizenship status.  Mr. Dangerfield stated that he was a

1  United States citizen. Agent Dodson then asked if there was anybody else in the vehicle.
2  Mr. Dangerfield stated there was not. Within plain view Agent Dodson saw another
3  individual, Mr. Schnurman, seated in the driver's seat of the RV.

4  Agent Dodson approached the RV from the passenger side, identified himself as a
5  Border Patrol Agent and told Mr. Schnurman to shut off and exit the vehicle. At this point
6  Mr. Schnurman exited the vehicle through the driver's side window and ran into an open
7  field. Agent Dodson pursued Mr. Schnurman, apprehended him and patted him down.
8  Agent Dodson then asked Mr. Schnurman about his citizenship. In response to Agent
9  Dodson's inquiry, Mr. Schnurman stated that he was a United States citizen. Upon returning
10 to the vehicles, Agent Dodson asked Mr. Schnurman how many aliens were in the RV. Mr.
11 Schnurman responded that there were "a bunch". Mr. Schnurman was not Mirandized at this
12 point.

13 Border Patrol agents searched the RV and found twenty-one aliens hiding within the
14 RV.

15 **ANALYSIS**

16 **MOTION TO SUPPRESS SEARCH.** Defendant argues that there was no probable cause to
17 arrest him and, therefore, the search of the recreational vehicle was unlawful. Defendant's
18 attempt to suppress his response that a "bunch" of aliens were in the RV has previously been
19 denied. After Defendant acknowledged that he knew illegal aliens were hiding in the
20 vehicle, it was clear that probable cause existed for Defendant to be arrested for alien
21 smuggling.

22 The search of the RV incident to arrest is lawful and justified because of concerns for
23 officer safety and the destruction of evidence. *Thornton v. United States*, ___ U.S. ___, 124
24 S.Ct. 2127, 2131 (2004). In this case, both concerns were substantiated. The agents had no
25 way of knowing if any of the occupants had a weapon. Moreover, if the vehicle was not
26 searched at that time, the aliens would have fled either in the RV or on foot. Their
27 unavailability as witnesses would have constituted a destruction of evidence.

28 Moreover, the RV was stopped in a traffic lane on a public highway. After arrest, the

1  RV could be moved under the "community caretaker doctrine." *United States v. Jensen*,
2  ____F.3d ____ (9th Cir., Case No. 04-30094, Oct. 6, 2005). In connection with moving the
3  vehicle, it would necessarily have to be searched and the contents inventoried. To have left
4  the vehicle in the road would have created a serious public safety hazard.

5  There was probable cause for Defendant's arrest and the search of the RV incident to
6  arrest was lawful under *Thornton*. The motion to suppress should be **DENIED**.

7  **MOTION TO SUPPRESS IDENTIFICATION.**

8  Defendant moves to suppress the identification of Defendant because of a suggestive
9  pre-trial show up. Witness Jaime Meza-Perez makes only an equivocal identification of
10 Defendant. The agents did nothing to direct the witness' attention to the Defendant at any
11 time, and the circumstances of Defendant's arrest minimize the Court's concern that a faulty
12 identification has been made due to tainted pre-deposition identification procedures. For
13 these reasons, the motion to suppress the in-court identification should be **DENIED**.

14 This Court has reviewed the videotape testimony of Mr. Meza-Perez. Meza-Perez
15 testified that he encountered two men when he entered the RV. The first man was holding
16 the door to the RV open. Meza-Perez had a good look at this person, who was not the
17 Defendant. The other person was sitting in the driver's seat. Meza-Perez was hurrying to get
18 into the RV and find a place to hide, so he did not get a good look at this person, other than
19 to see that the driver had tattoos and short hair. Meza-Perez did not see anyone run from the
20 RV. After Meza-Perez was removed from the RV, he saw the man who had been in the
21 driver's seat "a little bit away" in handcuffs accompanied by Border Patrol agents. Meza-
22 Perez testified this person "looked a little like the person in the blue shirt [the Defendant]."
23 The other material witness was unable to identify the Defendant.

24 Under these facts, it is clear that the observation of the Defendant by the material
25 witnesses was incidental, not intentional. Nor did this view of the Defendant shortly after
26 his arrest have much impact. *See United States v. Jackson*, 448 F.2d 963 (9th Cir. 1971) (The
27 Court held that accidental confrontation between eyewitnesses and defendants before a
28 pretrial hearing in which the defendants were led into courtroom under guard was not

unnecessarily suggestive and conducive to irreparable mistake in identification as to deny due process.).  One witness could not identify the Defendant and the other witness' identification was extremely equivocal.  Moreover, identification is a non-issue in this case.  Neither witness attributes any words or actions to the man in the driver's seat and, given the circumstances of his arrest, there can be little dispute that man was the Defendant.

Pretrial confrontations that are unintentional or accidental are not immune from constitutional infirmity. *Green v. Loggins*, 461 F.Supp. 24 (N.D. Cal. 1978) citing *United States ex rel. Ragazzinni v. Brierley*, 321 F. Sup. 440 (W.D.Pa. 1970).  However, these types of confrontations tend not to be unnecessarily or impermissibly suggestive. *Id.*; *See Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967 (1968); *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375 (1972); *United States v. Bagley*, 772 F.2d 482 (9th Cir. 1985).   The unintentional confrontation in this case is not unnecessarily or impermissibly suggestive and as such is not a violation of due process.

## CONCLUSION

For the reasons analyzed above, the Court recommends that the District Judge, after his independent review, enter an order to:

1. **DENY** the Motion To Suppress Unlawful Arrest and Search [Dkt. 34]; and

2. **DENY** the Motion To Suppress Unlawful Identification [Dkt. 33].

Pursuant to 28 U.S.C. § 636(b)(1)(B), the parties have ten (10) days from the date of this Report and Recommendation to file written objections to these findings and recommendations with the District Court.  Any objections filed should be filed as CR 05-01231-TUC-FRZ.

DATED this 28th day of October, 2005.

_____
CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE

1  FRZ
   CRP
2  Thomas E. Higgins, Jr., Esq.
   Munish Sharda, Esq.  *[AUSA]*
3  PTS